


Cozen O'Connor
Attorneys for Plaintiff
John B. Galligan, Esquire (JG-1589)
45 Broadway, 16th Floor
New York, New York 10006
(212) 509-9400

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY as subrogee of Belaire Condominium and Hospital for Special Surgery**<br>1400 American Lane<br>Schaumburg, Illinois 60196<br><br>and<br><br>**FIREMAN'S FUND INSURANCE COMPANY as subrogee of ARTHUR SKODNEK, IRIS R. DANKER, CAROL HIGGINS CLARK and LARRY W. ROSENTHAL**<br>777 Marin Drive<br>Novato, California 94998<br><br>Plaintiffs<br><br>v.<br><br>**CIRRUS DESIGN CORPORATION**<br>4515 Taylor Circle<br>Duluth, Minnesota 55811<br><br>Defendant | : | **CIVIL ACTION NO: 09 Civ. 8357**<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

**SECOND AMENDED COMPLAINT**

Plaintiff, American Guarantee and Liability Insurance Company a/s/o The Belaire Condominium and the Hospital for Special Surgery, and Plaintiff, Fireman's Fund Insurance Company a/s/o Arthur Skodnek, Iris R. Danker, Carol Higgins Clark and Larry W. Rosenthal, by and through their attorneys, upon information and belief, hereby allege the following:

**PARTIES**

1. Plaintiff, American Guarantee and Liability Insurance Company ("AGLIC"), is a New York Corporation, with its principal place of business located at 1400 American Lane, Schaumburg, Illinois, and at all times material hereto was authorized to issue insurance policies in the State of New York.

2. At all times material hereto, AGLIC's insured, Belaire Condominium ("plaintiff AGLIC's insured" or "Belaire"), was a mixed-use high-rise condominium apartment building located at 524 E. 72nd Street, New York, New York ("the subject premises".)

3. At all times material hereto, AGLIC's insured, the Hospital for Special Surgery (hereinafter "plaintiff AGLIC's insured" or "Hospital"), was a hospital specializing in orthopedic surgery and the treatment of rheumatologic conditions located at 535 East 70th Street, New York, New York along with a portion located within "the subject premises".

4. Plaintiff, Fireman's Fund Insurance Company ("FFIC") is a corporation duly organized and existing under the laws of the State of California with its principal place of business at 777 Marin Drive, Novato, California. At all times material hereto, Fireman's Fund was duly authorized to issue policies of insurance in the State of New York.

5. At all times material hereto, FFIC insured the following residents of the subject premises: Arthur Skodnek ("Skodnek"), Unit PH 1, 43rd Floor, 524 72nd Street, New York, NY; Iris R. Danker ("Danker"), Units C, D and E, 32nd Floor, 524 72nd Street, New York, New York; Carol Higgins Clark ("Clark"), Units D, E and F, 38th Floor, 524 72nd Street, New York, New York; and Lawrence W. Rosenthal ("Rosenthal"), Units A and B, 43rd Floor, 524 72nd Street, New York, New York ("plaintiff's insureds".)

6. Defendant, Cirrus Design Corporation ("Cirrus"), upon information and belief, is a Wisconsin corporation with its principal place of business located at 4515 Taylor Circle,

Duluth, Minnesota 55811 and at all times material hereto was engaged in the business of, *inter alia*, designing, engineering, manufacturing, marketing, selling, leasing and distributing aircraft for personal use including, but not limited to, the model SR-20.

## JURISDICTION AND VENUE

7. Jurisdiction is invoked under the provisions of 28 U.S.C. §1332 as this is an action between citizens of different states.

8. The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-five Thousand ($75,000.00) Dollars.

9. Venue is proper in this jurisdiction pursuant to 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

10. At all times material hereto, AGLIC provided property insurance coverage under policy No. MLP9375438-01 (hereinafter "subject policy for Belaire") to Belaire insuring its real and personal property at the subject premises.

11. At all times material hereto, AGLIC provided property insurance coverage under policy No. ZMD 3518764-06 ("subject policy for the Hospital") to the Hospital insuring its real and personal property at the subject premises.

12. At all times material hereto, FFIC provided property insurance coverage under policy No. NZG 02814830 ("subject policy for Skodnek") to Skodnek insuring his real and personal property at the subject premises.

13. At all times material hereto, FFIC provided property insurance coverage under policy No. NZB 03633632 ("subject policy for Danker") to Danker insuring her real and personal property at the subject premises.

14. At all times material hereto, FFIC provided property insurance coverage under policy No. NZC 02313026 ("subject policy for Clark") to Clark insuring her real and personal property at the subject premises.

15. At all times material hereto, FFIC provided property insurance coverage under policy No. NZQ 00468873 ("subject policy for Rosenthal") to Rosenthal insuring his real and personal property at the subject premises.

16. Prior to October 11, 2006, Cirrus designed, engineered, manufactured, marketed, and distributed aircraft for personal use including, but not limited to, the 2002 model SR-20.

17. Prior to October 11, 2006, Cirrus designed, engineered, manufactured, marketed, leased, sold and distributed a 2002 model SR-20 aircraft bearing serial number 1230, Model S Code 53157717 with tail number N929CD ("the subject aircraft").

18. On or about October 11, 2006, the subject aircraft collided with the subject premises causing extensive and significant damage to the subject premises and property of plaintiffs' insureds ("the incident").

19. Immediately prior to the collision, the pilots of the Cirrus SR20 were flying north along the East River which involved using the aircraft's flight controls including, inter alia, the ailerons, rudder, elevator and associated hardware including the rudder aileron interconnect.

20. The flight up the East River was an ordinary maneuver for the subject aircraft and well within the capability of the aircraft and the pilots at the time.

21. Witnesses on the ground, immediately before the crash, observed the plane flying erratically out of control, doing loop-deloop type maneuvers, losing altitude rapidly, wings wobbling from side to side. These witnesses, interviewed by the National Transportation Safety Board, indicated that they thought the pilots were struggling to control the flight path of the aircraft.

22. As the pilots were flying the aircraft, they lost the ability to control the aircraft through the flight control system resulting in uncontrollable rolls, loss of directional control resulting in the aircraft impacting the subject building in an inverted attitude.

23. The flight control system for the Cirrus SR20 aircraft utilized a system of bungee cords and clamps to control operation of the ailerons and the rudder of the plane. The rudder and ailerons must function properly and not jam in order for the plane to be controlled by the pilot.

24. In the Cirrus SR20 plane, the rudder and the ailerons were interconnected at one location under the rear seat of the aircraft with all the cables and hardware joining at the Rudder Aileron Interconnect (RAI).

25. Upon information and belief, the Rudder Aileron Interconnect system was a design selected by Cirrus, the manufacturer, as a substitute for a more sophisticated and safe design which could not be accomplished within a time frame for Cirrus to obtain FAA certification of the aircraft for the purposes of marketing and sales.

26. The Rudder Aileron Interconnect design utilized clamps called Adel clamps on bungee cords connected to the pilot's flight controls which were susceptible to jamming, binding and locking thereby causing a loss of control of the aircraft's flight controls by the pilot(s).

27. The RAI design was defective in that it allowed for the RAI components to jam, bind and lock during flight preventing the pilots from controlling the aircraft.

28. Alternative safer designs to the RAI interconnect system were available to Cirrus at the time of the design and manufacture of the SR20 plane which would have eliminated entirely the use of the RAI design and eliminated the potential for lock up of the flight controls during flight. An available alternative safe design was to redesign the dihedral of the wing so as to eliminate the necessity for the use of bungee cords and clamps and thereby eliminate the RAI entirely from the design. Absent this design, a safer alternative design would have incorporated

more clearances between the rudder and aileron cables, hardware and other components of the RAI.

29. Upon information and belief, after the October 11, 2006 accident involved in this instant litigation, Cirrus in May of 2007 recalled all Cirrus SR-20 and SR-22 aircraft and required owners and operators to comply with a specific Service Bulletin to prevent flight controls from jamming and loss of control of aircraft which could potentially cause a loss of life. There were three revisions to the subject service bulletin because the jamming problem was not resolved initially and hardware had to be changed as well as a major revisions to the maintenance manual to assure that mechanics were correctly performing inspections, maintenance and the Service Bulletin itself on Cirrus aircraft. Such alternative design changes were feasible and available as of the time that the original SR20 aircraft was designed. Furthermore, the Federal Aviation Administration issued an Airworthiness Directive Mandating that all Cirrus Aircraft be recalled and retrofitted pursuant to the recommendations by the manufacturer in the Service Bulletin.

30. Upon information and belief, subsequent investigation following the accident disclosed that the Cirrus SR20 had knowledge of prior flight control problems with their aircraft and they never investigated other flight control problems reported by owners and operators. The subject aircraft had defects in the flight control system as referenced in the preceding paragraphs herein which rendered the SR20 unreasonably dangerous, created a substantial likelihood of harm from pilots being unable to control the airplane in flight and, in fact were a substantial factor in causing the crash into the plaintiff's insured's buildings.

31. Upon information and belief, investigation following the accident disclosed that the defective component parts of the flight control system were found in a condition such that the

Adel clips and bungee clamps had crossed over each other and locked the controls in the RAI system.

32. Upon information and belief, investigation subsequent to the crash determined that numerous physical components of the flight control system which were involved in the crash bore marks and other scientific indications that the flight control system had locked/jammed during flight rather than sustained damage or injury as a result of the crash impact into the buildings. This evidence includes certain scrape marks found on the aft spar of the wing adjacent to the pulley attached to the trim cartridge, certain impact marks found on the bellcrank stop plate, bending of the pulley brackets for the aileron flight control cables and bending of components in the cockpit of the aircraft indicating that the pilots fought the controls in an effort to unjam the system.

33. Upon information and belief, during the flight, the Rudder Aileron Interconnect (RAI) jammed and locked the controls when the Rudder Aileron Interconnect Adel clamp crossed over and became locked on the aileron bungee clamp thereby making control of the plane by the pilot through the use of ailerons and the rudder impossible. Upon information and belief, the erratic behavior of the plane observed by on site witnesses is consistent with the loss of flight control as a result of jamming/locking of the RAI system i.e., that the plane performed rolls described by witnesses as loop-deloop maneuvers.

34. Upon information and belief, Cirrus was aware prior to the accident of October 11, 2006 of a similar incident involving a Cirrus Model SR20 airplane that experienced similar control lockups during a landing procedure wherein the flight controls locked up and caused a near accident. In May of 2006, before this accident, Bridgette Doremire, a flight instructor and aircraft mechanic experienced a loss of control of her aircraft and reported it to Cirrus, the Federal Aviation Administration and the National Transportation and Safety Board. Cirrus never

inspected the plane to determine the cause of the jam or loss of control before the instant accident on October 11, 2006.

35. Upon information and belief, Cirrus failed to fully investigate the circumstance and reason for this lockup of the controls and the prior incident and, instead, sought to persuade the pilot from reporting the incident to the Federal Aviation Administration and the National Transportation Safety Board.

36. Upon information and belief, Cirrus was also aware that the Model SR20 planes were supplied from the factory in an out of rig condition in which the components of the RAI were not properly aligned, thereby making them susceptible to locking to each other. Further, upon information and belief, the Cirrus maintenance manual for mechanics gave improper instructions on how to properly rig the plane in the field.

37. Upon information and belief, Cirrus issued a service bulletin SB-2X-27-14 relating to the SR20's flight controls which outlined, inter alia, that specific hardware on the Cirrus Model SR20 for the RAI arm and RH aileron cables should be replaced because of a design defect that the aileron cable clamp was catching on the RAI interconnect arm.

38. Upon information and belief, Cirrus did either insufficient or no precertification testing on the RAI design interconnect system to determine its safety or propriety and its propensity to lock or jam during flight.

39. Upon information and belief, subsequent to this accident, the FAA, after investigating the incident, issued an airworthiness directive relating to the Cirrus Model SR20 plane which, upon a finding of out of rig problems with the RAI interlock system, indicated that this posed a general safety hazard to the public.

40. The aforesaid facts demonstrate that:

1) The Cirrus SR20 was defective in design and unreasonably dangerous to fly;

2) Was otherwise defective and dangerous to users and consumers and those who foreseeably could be impacted by a crash of an SR20 plane which could not be controlled;

3) That Cirrus had available to it alternative safe designs which could and should have been utilized in designing the SR20 flight control system and which Cirrus later adopted. The alternative safe design was cost-effective and feasible and would have eliminated the RAI interconnect system, bungee cords, clamps and pulleys and would thereby have eliminated the hazard of lock up/jamming of the flight controls of the SR20 during flight.

41. The above facts indicate that Cirrus was negligent in the following respects:

a. Failing to fully test the SR20 control system before submitting the plane for certification to the FAA.

b. Failing to explore and adopt a safer alternative design which was available at the time of design and manufacture;

c. Failing to properly rig and situate parts within the RAI system so that they could not cross over each other and lock/jam during flight;

d. Failing to warn users or consumers of known flight control problems when it knew or should have know that the RAI flight control system had experienced lock/jammed conditions during flight conditions and that the use of the plane with such defects would present a clear and present danger to those flying the plane.

42. As a result of the defective design, manufacture and negligence, on the part of Cirrus as set forth in the aforesaid paragraphs, the pilots in the Cirrus SR20 plane at the time of the accident were unable to control the plane and said defects were a substantial factor in causing the plane to be out of control and crash into the plaintiff's insured's building.

43. Plaintiffs intend to rely upon such additional facts and information as are developed during discovery of the manufacturing, design and testing process to support the allegations contained herein.

44. The extensive and significant damage caused by the collision of the subject aircraft with the subject premises also extended to businesses and residential properties contained within the subject premises.

45. Pursuant to the terms and conditions of the subject AGLIC insurance policy to Belaire, AGLIC made payments to Belaire for the damages so sustained, in an amount of EIGHT MILLION, THREE HUNDRED TWELVE THOUSAND, TWENTY-TWO DOLLARS AND EIGHTY-EIGHT CENTS ($8,312,022.88).

46. Pursuant to the terms and conditions of the subject AGLIC insurance policy to the Hospital, AGLIC made payments to the Hospital for the damages so sustained, in an amount in excess of NINE HUNDRED EIGHTY-EIGHT THOUSAND, FOUR HUNDRED THIRTY-SIX DOLLARS AND TWENTY-TWO CENTS ($988,436.22).

47. Pursuant to the terms and conditions of the subject FFIC insurance policy to Skodnek, FFIC made payments to Skodnek in an amount of THREE HUNDRED AND FOUR THOUSAND, THREE HUNDRED SIXTY-TWO DOLLARS AND FIFTY-TWO CENTS ($304,362.52).

48. Pursuant to the terms and conditions of the subject FFIC insurance policy to Danker, FFIC made payments to Danker in an amount of FORTY-NINE THOUSAND, SEVEN HUNDRED FORTY DOLLARS AND ZERO CENTS ($49,740.00).

49. Pursuant to the terms and conditions of the subject FFIC insurance policy to Clark, FFIC made payments to Danker in an amount of FORTY THOUSAND, THREE HUNDRED SEVENTY-SIX DOLLARS AND THIRTY-SEVEN CENTS ($40,376.37).

50. Pursuant to the terms and conditions of the subject FFIC insurance policy to Rosenthal, FFIC made payments to Rosenthal in an amount of ONE MILLION, SIX HUNDRED SIXTY-FIVE THOUSAND, FOUR HUNDRED FOURTEEN DOLLARS AND FOURTEEN CENTS ($1,665,414.14).

51. In accordance with the common law principles of legal and equitable subrogation in New York, AGLIC is subrogated to the rights of its insureds with respect to the damages compensable under the policies.

52. In accordance with the common law principles of legal and equitable subrogation in New York, FFIC is subrogated to the rights of its insureds with respect to the damages compensable under the policies.

**COUNT I**

**PLAINTIFF AGLIC a/s/o BELAIRE CONDOMINIUM and THE HOSPITAL FOR SPECIAL SURGERY v. DEFENDANT CIRRUS DESIGN CORPORATION**

**NEGLIGENCE**

53. AGLIC incorporates by reference the allegations set forth in the above paragraphs as if the same were fully set forth at length herein.

54. The damages sustained in this loss were the direct result of the negligence, carelessness and negligent acts and omissions of defendant Cirrus, its agents, servants and/or employees acting within the scope or course of their employment in:

a. manufacturing, designing, engineering, distributing, servicing and/or supplying the subject aircraft and its component steering control parts in a defective and unreasonably dangerous condition;

b. failing to properly and adequately test, inspect, repair and maintain the subject aircraft and its component steering control parts in such a way so as to prevent the incident and resulting damages;

c. failing to disclose known defect(s) in the subject aircraft's steering controls that existed at the time of manufacture;

d. failing to exercise the requisite degree of care and caution in the manufacture, engineering, designing, testing, servicing, and/or distribution of the subject aircraft and its steering controls;

e. failing to warn consumers of the defect(s) in the subject aircraft when defendant knew or should have known of the defect(s) and that they constituted a danger; and

f. such other further negligent acts and omissions that may be revealed during discovery.

55. Pursuant to the terms and conditions of the subject insurance policies, AGLIC made payments to its insureds Belaire Condominium and the Hospital for Special Surgery for the damages so sustained, in the amount of NINE MILLION, THREE HUNDRED THOUSAND, FOUR HUNDRED FIFTY-NINE DOLLARS AND TEN CENTS ($9,300,459.10).

56. In accordance with the common law principles of legal and equitable subrogation, AGLIC is subrogated to the rights of its insureds with respect to the damages compensable under the policies.

WHEREFORE, Plaintiff, American Guarantee and Liability Insurance Company a/s/o Belaire Condominium and the Hospital for Special Surgery, demands judgment in its favor and against defendant, Cirrus Design Corporation, in an amount of NINE MILLION, THREE HUNDRED THOUSAND, FOUR HUNDRED FIFTY-NINE DOLLARS AND TEN CENTS ($9,300,459.10) together with interest and costs of this action.

**COUNT II**

**PLAINTIFF AGLIC a/s/o BELAIRE CONDOMINIUM and THE HOSPITAL FOR SPECIAL SURGERY v. DEFENDANT CIRRUS DESIGN CORPORATION**

**STRICT PRODUCTS LIABILITY**

57. AGLIC incorporates by reference the allegations set forth in the above paragraphs as if the same were fully set forth at length herein.

58. The subject incident and the resulting damage and destruction to the real and personal property of AGLIC's insureds was caused by the defendant's actions and/or inactions for which it is strictly liable under §402A of the Restatement of Torts, 2d., in:

a. designing, distributing and selling the subject aircraft with defective steering controls as outlined in the factual paragraph of this complaint which were unreasonably dangerous to the property of AGLIC's insureds;

b. allowing the dangerous design to exist in the subject aircraft by failing to adequately and properly test the subject aircraft prior to submitting the same for certification for defects in the steering controls therein; and

c. failing to disclose known defect(s) in the subject aircraft's steering controls that existed at the time of manufacture;

d. failing to adopt an alternative safe design which was available and feasible as set forth in the factual allegations herein.

59. As a direct and proximate result of the aforesaid conduct, the subject aircraft crash and fire occurred and resulted in damage and destruction to the real and personal property of plaintiff AGLIC's insureds in the amount of $9,300,459.10.

WHEREFORE, Plaintiff, American Guarantee and Liability Insurance Company a/s/o Belaire Condominium and the Hospital for Special Surgery, demands judgment in its favor and against defendant, Cirrus Design Corporation, in an amount of NINE MILLION, THREE HUNDRED THOUSAND, FOUR HUNDRED FIFTY-NINE DOLLARS AND TEN CENTS ($9,300,459.10) together with interest and costs of this action.

**COUNT III**

**PLAINTIFF FFIC a/s/o SKODNEK, DANKER, CLARK AND ROSENTHAL v. DEFENDANT CIRRUS DESIGN CORPORATION**

**NEGLIGENCE**

60. FFIC incorporates by reference the allegations set forth in the above paragraphs as if the same were fully set forth at length herein.

61. The damages sustained in this loss were the direct result of the negligence, carelessness and negligent acts and omissions of defendant Cirrus, its agents, servants and/or employees acting within the scope or course of their employment in:

a. manufacturing, designing, engineering, distributing, servicing and/or supplying the subject aircraft and its component steering control parts in a defective and unreasonably dangerous condition;

b. failing to properly and adequately test, inspect, repair and maintain the subject aircraft and its component steering control parts in such a way so as to prevent the incident and resulting damages;

c. failing to disclose known defect(s) in the subject aircraft's steering controls that existed at the time of manufacture;

d. failing to exercise the requisite degree of care and caution in the manufacture, engineering, designing, testing, servicing, and/or distribution of the subject aircraft and its steering controls;

e. failing to warn consumers of the defect(s) in the subject aircraft when defendant knew or should have known of the defect(s) and that they constituted a danger; and

f. such other further negligent acts and omissions that may be revealed during discovery.

62. Pursuant to the terms and conditions of the subject insurance policies, FFIC made payments to its insureds Arthur Skodnek, Iris R. Danker, Carol Higgins Clark and Larry W. Rosenthal for the damages so sustained, in the amount of TWO MILLION, FIFTY-NINE THOUSAND, EIGHT HUNDRED NINETY-THREE DOLLARS AND THREE CENTS ($2,059,893.03).

63. In accordance with the common law principles of legal and equitable subrogation, FFIC s subrogated to the rights of its insureds with respect to the damages compensable under the policies.

WHEREFORE, Fireman's Fund Insurance Company, a/s/o Arthur Skodnek, Iris R. Danker, Carol Higgins Clark and Larry W. Rosenthal, demands judgment in their favor and against defendant, Cirrus Design Corporation, in an amount of TWO MILLION, FIFTY-NINE THOUSAND, EIGHT HUNDRED NINETY-THREE DOLLARS AND THREE CENTS ($2,059,893.03) together with interest and costs of this action.

**COUNT IV**

**PLAINTIFF FFIC a/s/o SKODNEK, DANKER, CLARK AND ROSENTHAL v. DEFENDANT CIRRUS DESIGN CORPORATION**

**STRICT PRODUCTS LIABILITY**

64. FFIC incorporates by reference the allegations set forth in the above paragraphs as if the same were fully set forth at length herein.

65. The subject incident and the resulting damage and destruction to the real and personal property of FFIC's insureds was caused by the defendant's actions and/or inactions for which it is strictly liable under §402A of the Restatement of Torts, 2d., in:

a. designing, distributing and selling the subject aircraft with defective steering controls as outlined in the factual paragraph of this complaint which were unreasonably dangerous to the property of FFIC's insureds;

b. allowing the dangerous design to exist in the subject aircraft by failing to adequately and properly test the subject aircraft prior to submitting the same for certification for defects in the steering controls therein; and

c. failing to disclose known defect(s) in the subject aircraft's steering controls that existed at the time of manufacture;

d. failing to adopt an alternative safe design which was available and feasible as set forth in the factual allegations herein.

66. As a direct and proximate result of the aforesaid conduct, the subject aircraft crash and fire occurred and resulted in damage and destruction to the real and personal property of plaintiff FFIC's insureds in the amount of $2,059,893.03.

WHEREFORE, Fireman's Fund Insurance Company, a/s/o Arthur Skodnek, Iris R. Danker, Carol Higgins Clark and Larry W. Rosenthal, demands judgment in their favor and against defendant, Cirrus Design Corporation, in an amount of TWO MILLION, FIFTY-NINE THOUSAND, EIGHT HUNDRED NINETY-THREE DOLLARS AND THREE CENTS ($2,059,893.03) together with interest and costs of this action.

Dated: New York, New York
January 26, 2011

Respectfully submitted,

COZEN O'CONNOR

BY: John Galligan

John B. Galligan, Esquire (JG-1589)
Cozen O'Connor
45 Broadway Atrium
Suite 1600
New York, NY 10006
212.509.9400 (phone)
212.509.9492 (fax)
jgalligan@cozen.com

Of Counsel:

Michael J. Izzo, Jr., Esquire
Mark T. Mullen, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
215.665.2000 (phone)
215.665.2013 (fax)

Hunter J. Shkolnik, Esquire (HJS 4854)
Rheingold, Valet, Rheingold, Shkolnik & McCartney
113 East 37th Street
New York, NY 10016
212.684-1880 (phone)
212.689-8156 (fax)

**CERTIFICATE OF SERVICE**

I, Guy A. Bell, hereby certify that a copy of the foregoing Plaintiff's Second Amended Complaint was served upon defendant this 26th day of January, 2011 by First Class Mail, postage pre-paid as follows:

Patrick E. Bradley, Esq.
Reed Smith LLP
*Attorneys for Defendant, Cirrus Design Corp.*
Princeton Forrestal Village
136 Main Street, Suite 250
Princeton, New Jersey 08540-7839

Guy A. Bell, Esq. (GB-1217)

PHILADELPHIA\5867047\1 193989.000